Council please approach the bench. Good morning. Who will be arguing for the Appaline? Frederick Wolfe on behalf of Veronica Hasburn. Wolfe? Yes. And for the Appaline? Anthony Longo, L-O-N-G-O. Gentlemen, you have 20 minutes each, a 10 minute rebuttal. And if you need more time, we will consent to that if we think it's necessary. Would you proceed, Mr. Wolfe? Thank you, Your Honor. May it please the Court. My name is Franklin Wolfe and I represent the Appaline Veronica Hasburn in this matter. The Appaline respectfully requests that this Court reverse the June 2011 order of the Circuit Court in this matter, which dismissed out Appaline's intentional tort claims against Resurrection Health Care. That June 2011 order should be overturned for two reasons. One, there exists a set of facts that would entitle the Appaline to relief. And two, that Appaline's intentional claims are not barred by the doctrine of res judicata. Well, we understand the facts completely in the case. So the legal questions as it applies to this and the way the pleadings were done and the counsel preceded in the making of the record here, that's what's of concern to us. I understand, Your Honor. As to the first element under Section 2615. Well, I think what Justice Simon is indicating is he had two orders coming out of the Circuit Court. Correct? Correct, Your Honor. The last order was a dismissal of the entire case on the basis of res judicata. Is that correct? I don't think so, Your Honor. The 2014 order dismissed the negligence claims against Resurrection Health Care. The June 2011 order dismissed under Section 216 the intentional tort claims. Okay. But when the Circuit Court dismissed the case, it dismissed the case on the basis of res judicata. Correct? It's my understanding that the negligence claims were dismissed under the doctrine of res judicata, Your Honor. And the claims dismissed for res judicata were based upon a dismissal that previously took place in the Federal Court. Correct? That is correct, Your Honor. So when a court uses the term res judicata, they're saying that the case has been finally disposed of because the principle is that all claims that were disposed of in the first case and all claims that could have been raised in the earlier case have been decided finally. Correct? Correct, Your Honor. But at the same time, the District Court action in Federal Court only concerned the negligence claims. Okay. So does the principle of res judicata apply once the Federal Court dismissed the complaint that contained only one count? It did not, Your Honor. Why is that? Well, under res judicata, there are three elements. You need a final judgment on the merits. Which we have. An identity of cause of action. An identity of parties. There is not an identity of cause of action here. With respect to the District Court action, only the negligence claims were brought. In the Circuit Court action, it was a combination of negligence claims and intentional claims. Now, as a result, there is not an identity of cause of action between the negligence claims in the District Court action and the intentional claims in the Circuit Court action. But we in Illinois follow the transactional test, do we not? Does a res judicata include all claims that were brought and that could have been brought? It does, Your Honor. But at the same time, there needs to be an identity of cause of action between what the District Court ruled upon and the intentional claims at the Circuit Court level. And here, there is no such identity of claims. So because you filed an amended complaint in the federal court alleging only a negligence count against resurrection and the government, that when the federal court dismissed that case, that count with prejudice, it's your contention that you were thereafter allowed to file another case or cases alleging intentional torts or other forms of claims for relief against the same parties from the same incident? It's my understanding, Your Honor, that the Circuit Court action was already pending at the time the District Court action had been instituted. With respect to the... Well, let's go to that. What was pending at the time with the Circuit Court was two counts of negligence, correct? Correct. That were put on the state calendar, correct? Correct. And the District Court, not you personally, but your firm, at that point in time went to the federal court and filed two counts of negligence against the same parties, correct? It's my understanding, Your Honor, that with the Circuit Court action, it was removed by the federal government. Not the second time. First time it was. First time it was removed and it was dismissed without prejudice because your client did not exhaust her administrative remedies, correct? Correct, Your Honor. Then you came back to the Circuit Court sometime later and refiled a claim against resurrection and government for intentional torts and for negligence counts. The intentional torts were dismissed, making them an interlocutory dismissal, correct? And you still had your negligence counts pending in the state court. You then exhausted your administrative remedies as far as the federal court action and you took your negligence counts that were pending in the Circuit Court and refiled the same essentially negligence counts in the federal court. The federal court sometime later dismissed that complaint without prejudice and allowed you to refile. You did refile, but you didn't refile two negligence counts. You refiled one negligence count, correct? Correct, Your Honor. So, same case, same claims, same parties, correct? In the federal court and in the state court. Although you have now one count pending in the federal court and two counts stayed in the state court, correct? Correct. The federal court dismisses the one count with prejudice, correct? Correct. And no appeal was taken from that order, correct? Correct, Your Honor. Now, how would you answer the question of that dismissal with prejudice in the federal court was a final order disposing of the claims between the plaintiff and resurrection and the government that were brought, the one negligence count and all counts that could have been brought? How would you answer that question? I mean, that's the dilemma that we're confronted with. I understand, Your Honor. And then I go back to the identity of the causes of action. Well, so you're saying that just because you named a negligence count and you didn't name an intentional tort, because you didn't name the intentional counts, you're entitled to bring those someplace else at some later time. That is correct, Your Honor, because they are not the same causes of action. With respect to the intentional claims, we could not have pursued. Well, let me say this differently. With respect to the intentional claims, we would have to explore any scope of Dr. Tong's employment with respect to those intentional claims that could not be explored with the negligence claims. They all arose out of the same operative fact. I'm sorry, I couldn't hear you. They all arose out of the same operative fact. Well, they did arise from the same sexual assault that has happened. That is for certain. But at the same time, an exploration of the negligence action would not include what duties were within the scope of Dr. Tong's employment. An exploration of the negligence action would include what resurrection's duties were. That's for certain. That in what he did, it's not within the scope of his duties. And to that point, Your Honor, I do disagree with respect to the scope of Dr. Tong's duties. Counsel, please go back to his question about the same set of operative facts. You've just got multiple theories of recovery. Assault and battering, negligent supervision, negligence. We're talking about the same thing. You can recover on any of those counts. But as Justice Pierce has pointed out, the federal court resolved the question. You brought it back to the state court. They found that it was re studicata. Are you going to continue to tell us that re studicata doesn't apply? Well, to be frank, Your Honor, it is not the same set of operative facts. What facts are different? The facts that are different between the intentional claims and the negligence claims are what duties were within Dr. Tong's scope of employment versus what duties resurrection owed to Ms. Hasbin to protect her from any sort of assault or misdeeds by Dr. Tong. One focuses on what Dr. Tong's actions were. The other focuses on what resurrection should have done with respect to Ms. Hasbin's protection. The intentional claims, were they filed in the federal court? No, Your Honor. And you made that election, right? And Justice Pierce continues to tell you claims that could have been brought. It could have been brought over there. You elected not to do it, right? That is correct, Judge. And the federal court resolved it? The federal court did resolve the negligence claims. It specifically made no ruling as to the intentional claims. Because you didn't file it there. Correct. But you could have. Correct, Judge. And the intentional claims were ultimately dismissed. I'm sorry? The intentional claims were ultimately dismissed. Correct. They were dismissed in the June 2011 order, and it is our contention that they were, that it was error to do so. Appellee cites to the Hoover case in this matter, stating that sexual assault cannot, as a matter of law, be within the scope of a doctor's duties. The distinction between the Hoover case and the present matter is a certification by the Attorney General that Dr. Tong acquiesced to, saying that his actions were indeed within the scope of his employment with PCC, with the federally funded hospital. Now, in the June 2011 order, the circuit court judge made the comment that Dr. Tong's employment with PCC does not necessarily preclude a finding that he also had an employment or agency relationship with resurrection. But it was never made. It was just, it was an ad hoc exception that was noted in that that possibly could exist, but nothing was done with it or about it. Well, and that's the purpose of 2615. There has to be no set of facts that would entitle Ms. Hasbin to relief. Here, there is a set of facts with which the circuit court judge acknowledged, saying that there is the possibility of an employment relationship between Dr. Tong and resurrection, and the certification by the Attorney General concerning the scope of his employment. It wasn't explicated and it wasn't preserved. I'm sorry, what did you want to say about that? It was said, but nothing was done about it. It was some type of an exception that was noted possibly, but no action was taken regarding it whatsoever. Well, with respect to that certification, the Attorney General certified that the actions of Dr. Tong did occur within the scope of his employment. Wait, the actions of what? The actions of Dr. Tong were within the scope of his employment for purposes of removal and for purposes of substituting the United States in as a party in place of PCC and Dr. Tong. That was because the PCC came into this because you had been a federal employment, but that was not what was going to be dispositive in this case. Well, at the same time, Your Honor, there is an acknowledgment. The government withdrew. Regardless of whether or not they withdrew, there is that certification by the Attorney General, which cannot mean nothing that Dr. Tong's actions occurred within the scope of his employment. But the ultimate determination, you've already said, was not something that was doable under the scope of employment. It itself denies the claim. Well, and that certification is what distinguishes this case from Hoover. There was no such certification in Hoover that the actions occurred within the scope of that doctor's employment. Now, on this point, I would explore the case of St. Paul, where the court looked into whether or not a psychotherapist's sexual assault of a patient occurred within the scope of his employment. In there, the court found that the type of vulnerability and intimacy associated with the psychotherapist-patient relationship warranted, well, at least it did not preclude a finding, that such sexual assault occurred within the scope of that psychotherapist's relationship. Let's assume for the sake of argument that you're 100 percent correct, that the intentional tort claims as pledged in the Circuit Court of Cook County in 2011 were perfectly proper. Correct? When they were dismissed, there was an interlocutory order. Correct? You couldn't do anything about it because you still had your negligence counts pending. Correct? Correct, Your Honor. We had to wait until the resolution of those negligence claims. Ah. And they were resolved in 2013 or 14, I think it was, when Judge Flanagan dismissed the case in its entirety, saying that you can't bring this claim, any claim, because it res due to capital. Correct? And that's what you did. The January 2014 order disposed of solely the negligence claims. It made no reference to the intentional claims. And what was the effect on that dismissal on the interlocutory intentional tort claims from 2011? What happened to those claims at that point? Did they become final and imputable? They did, Your Honor. So you're saying that they became final at that point because she only dealt with the negligence claims in a final manner? They became final because they resolved the remaining portion of the claim that had not yet been resolved. Pursuant to 304, we had to wait until the resolution of the remaining claims at the circuit court to appeal the intentional claims. If one disagreed with you on the effect of Judge Flanagan's 2014 order dismissing the entire case on the basis of res due to capital, if one took the position that that's what happened, you abandoned the propriety of that order, did you not, in your brief, by failing to address it on appeal? Well, whether or not we address the January 2014 order is beside the point. Why is that? FLE sent to the case of Health Chicago in support of their mootness argument, and I argue that that case is not applicable to the present matter. Why is that? In Health Chicago, the plaintiff brought two types of actions, breach of contract and negligence actions. At the outset of the case, the negligence actions were dismissed, and the breach of contract claims were resolved in the defendant's favor on summary judgment. Now, when the plaintiff attempted to appeal the negligence claims after the resolution of the breach of contract claims, the appellate court determined that they had to appeal both. But the reason for that is that it was resolved on summary judgment that the defendant had complied with the terms of the contract. So, as a matter of law, the plaintiff's actions, or rather, the defendant's actions with respect to that contract on negligence could not, as a matter of law, be determined to be unreasonable because they did comply with the terms of that contract. There was a final determination on the merits of the dispute between the parties and the contract claim that resolved any dispute that could have arisen on the negligence theory. Isn't that basically how it works? I believe the basis for Health Chicago's ruling was that since there was compliance with the terms of the contract, as a matter of law, it could not be deemed that the defendant's actions were unreasonable for purposes of negligence. So, in that sense, yes, the breach of contract claims resolved the entire case. But we do have a distinction here with the negligence and intentional claims brought by Ms. Hasbun. The ruling on the negligence claims does not preclude any part of the intentional tort claims. So, I guess what you're saying is logically that if the negligence claims in this case had been resolved after a bench trial and Ms. Hasbun received a $1,000 recovery, which would be grossly inadequate, and you didn't appeal that, it would be your contention that she could refile another claim saying, you know what, I got an intentional tort claim here and I'm seeking a million dollars in damages. She would be allowed to do that because only her negligence claim was dealt with, not her intentional tort claim. Well, such refiling would not be necessary since a bench trial would only resolve the negligence claims. Now, based on 304, Ms. Hasbun would have to wait until the resolution of those negligence claims for that final judgment on the merits in order to appeal. Well, they were here by way of the dismissal by res judicata, similar to a verdict of $1,000. Your theory is, is because I still have a potential intentional tort claim, I should be allowed to bring that because the ruling on the negligence claim didn't satisfy the question of whether there was an intentional tort recovery available. Well, the ruling on the negligence claims doesn't cover all the issues that are associated with the intentional tort claims, Your Honor. I appreciate your tenacity, but you're just totally escaping and avoiding the principles of res judicata. I mean, it's very difficult for myself to comprehend how you jump from one to the other without touching both of them. Well, there isn't an identity of the causes of action, and that's where res judicata would not apply to the intentional claims. What you're really talking about is claim splitting. Well, there is no claim splitting here, Your Honor. This is bipolar exercise. You've got two things going on. Let me get some cohesiveness here. All we have here is appellant exercising a right pursuant to 304, appealing claims in the circuit court action that were not resolved. You didn't file a notice of appeal. Where would you get 304A? I'm sorry, I couldn't hear you. You didn't file a notice of appeal. Where would you get 304A language? Well, in the June 2011 order, there was no language in there under 304 saying that the appeal may be immediately taken. And absent that language, it's appellant's remedy to wait for the resolution of these circuit court claims. Under Rule 301, you can do that. But 304 is a different story. Well, in any event, Your Honor, appellant's remedy in this case was to wait for the resolution of the negligence claims and file a notice of appeal within 30 days of those negligence claims. She could not have taken this appeal any earlier than that. I'm sorry, she could not? She could not have taken this appeal any earlier than that. Counsel, just so that I'm clear, you are telling us that you can have one set of operative facts. You can have an assault and battery theory and a negligence theory, and you can recover on both of those? Is that what you're arguing? I disagree with your argument. I'm just asking you, is that your argument to the court? Yes, sir. No, Your Honor. Thank you. Thank you, sir. Thank you, Your Honor. Mr. Longo? Good morning, and may it please the court. My name is Anthony Longo. I represent Resurrection Health Care Corporation, the defendant, Applee. We're here today, Resurrection is here today, to ask this court to follow one of two paths this morning. The first path would be to dismiss plaintiff's entire appeal as moot, because when you compare the record to the notice of appeal, to plaintiff's brief, to the relief they're requesting, and when you look at the fatal nature of the defense of res judicata, the inescapable conclusion is that the appeal is moot. Plaintiff cannot gain any meaningful relief before this court. The second path that Resurrection proposes today would be putting mootness aside and on the merits affirming both of Judge Flanagan's orders, the first order being what I would refer to as the vicarious liability order, the one that came earlier in June of 2011, I believe, and then the second order, which declared that res judicata applies to plaintiff's action. What was the effect of the stay order?  It effectively had two live negligence counts and two interlocutory dismissed intentional torts, correct? Correct. So they were stayed. They weren't dismissed. They were just put in limbo. That's correct. So what's the effect of that while the plaintiff is pursuing relief in the federal courts? Well, I have a few responses to that, Your Honor. The first response is that this matter was placed on the stay calendar at plaintiff's insistence. When we appeared before the court, and if you look in the record, it would be page 354 at the case management conference of March 14th, 2012, plaintiff informed the court that he was going to, quote, unquote, seek a motion to reinstate in federal court. The court entered and continued case management until the very next date, which was May 9th, and on that date, Judge Flanagan was informed that the plaintiff did indeed file a federal action, and as such, the court put it on the stay calendar because there was no reason to have the state court case anymore. The only reason to stay it, I suppose, would be, and I think this is what Judge Flanagan was thinking, is that in case the federal court decides not to exercise supplemental jurisdiction, a federal judge could in their prerogative say, I am not going to exercise supplemental jurisdiction over resurrection, and in that instance, the case would be remanded back down to state court and presumably the case would be taken off the stay calendar. But with those prefatory comments stated, Judge, and to answer your question directly, the effect was to tell plaintiffs that they need to bring all of their action that they wanted to bring for resolution in the federal court action. Nothing prohibited plaintiffs from filing all four of their claims in the federal court action, but I suppose the only thing that plaintiffs prevented them from doing so was that Judge Flanagan had dismissed two of the accounts with prejudice, and so perhaps under Rule 11, plaintiffs felt apprehensive about repleting those in federal court, but the federal court became the venue chosen by the plaintiff to resolve all of their claims against the federal court and resurrection. And so the effect of the stay order was simply a signal to all of us that, and a signal to plaintiffs that the real fight between all the parties was going to be resolved in one court. And so I hope that answered your question directly. It wasn't any sort of permission by Judge Flanagan to split claims or any sort of permission that we should have two simultaneous actions pending. This was plaintiffs' plan all along to prosecute their action in one court, and that's why they brought us to federal court. Did you object to the question of supplemental jurisdiction come up in the second filing in the federal court? It did not at all. So you submitted to the jurisdiction of the court? Well, certainly. I mean, we were served, and we had a limited amount of time to respond to the complaint, and we asserted our Rule 12b-6 motion to dismiss. That's a livable defense. It must be asserted right away. And so we asserted our motion to dismiss. So, I mean, we were under the jurisdiction of the federal court. I suppose we're presumably under the supplemental jurisdiction of the federal court until they tell us otherwise. And so, right. What was the failure of administrative review? Because you're under the Federal Tort Claims Act. Was that where there was a failure of administrative proceeding that was reported in these briefs? Well, yeah, because the first time, and Justice Pierce was correct to point out and to stress that there were two trips to federal court in this case. The first trip to federal court was based upon a removal by the Attorney General's office. Plaintiff initially sued Dr. Tong in state court. He is an agent of the federal government. He is their deemed employee. The state court has no jurisdiction over him. And so it was removed to federal court. And in the federal court action, I'll call it federal court action number one, before Judge Manning, Blanche Manning, the United States moved to dismiss that action because plaintiff had failed to exhaust her administrative remedies. And the court concluded that absolutely the plaintiff failed to exhaust her administrative remedies, and therefore they dismissed the United States without prejudice to give plaintiffs the time to exhaust their administrative remedies, all towards bringing a later federal action. And so that's the reason, that's how we got to federal court in the first instance through a removal, and that's what was accomplished in federal court the first time was the court pointing out to the plaintiff in the first instance that they failed to exhaust their administrative remedies. Plaintiff's brief does not argue, doesn't cite one case, doesn't make any attempt to argue why res judicata does not apply. And that violates Illinois Supreme Court Rule 341H7. This court has every right to expect that an appellant, or any party for that matter, is going to cite authority for any proposition of law. And plaintiff deliberately decided to only file points and authorities with respect to what I would call the vicarious liability order, never once trying to reverse the res judicata order. Now I expected that when we saw the reply brief, plaintiff would try to salvage it in some respect. But the reply brief doesn't make any attempt to argue res judicata was wrong either. In fact, it confirms that plaintiff is not seeking an appeal from the res judicata order. And so the question that this court must ask itself is do we have a live case in controversy at this point? This court stated in Health Chicago that an appeal becomes moot when a court can no longer effect the relief originally sought by the appellant. The relief originally sought by the appellant in this case is in their notice of appeal. They declared an intention to seek reversal of the vicarious liability order and to seek a reversal of the res judicata order. Plaintiff then files their brief, and we see that plaintiff waives the issue of res judicata under Illinois Supreme Court Rule 341H7. And so now the court looks at what relief can we give the plaintiff? Plaintiff in their brief, and they just told you, Your Honor, that they want to have a trial on the merits with respect to those two intentional counts, right? They believe that Hoover is the incorrect precedent to apply, and they're asking this court to reverse those two intentional counts. Let's say that the court does that. Can they have a trial in the Circuit Court of Cook County on those two counts when the doctrine of res judicata applies? Res judicata bars not only what was brought but what could have been brought. The intentional tort claims are barred. Not only were they brought in the state court action, but they could have been brought in the federal action for that matter, since they weren't finally dismissed by the state court. No 304A language had been entered. And so this court can give no effective relief. If you reverse the two intentional counts, they would immediately succumb to the fatal defense of res judicata. Res judicata bars everything. I think Plaintiff sort of proposes in her reply brief that this court can act as sort of a time machine, where this court can reverse the intentional tort claims, and then we would be transported back in time to the moment when those cases were dismissed, before res judicata became an issue. But that's not the law. Res judicata will become the law of this case. Res judicata is a fatal defense. It is akin to a verdict, when you go through any number of hypotheticals that you could draw from the Health Chicago decision. And so this appeal is moot, and that's the first path the court should follow. The second path that this court can follow would be to look at it on the merits, and affirm both orders of Judge Flanagan. Her first order, the vicarious liability order, is absolutely correct. It is well-settled law that any sexual assault committed by a medical doctor on their patient is not within the scope of their employment, and it's not in furtherance of the hospital's business. It is instead, as this court correctly stated in Hoover, solely for the benefit of the doctor or agent or employee themselves. That's just the very nature of sex. There is no business in Illinois that I can think of where sexual assault furthers the business interests of the master, and that certainly could never be the case with a hospital. Hospitals are in business to treat people, to make them well, to make them comfortable. Here, plaintiff's allegations, which must be taken as true, state that she was sexually assaulted by her OB-GYN. This invokes the Hoover rule. There's no reason to depart from Hoover. Hoover was absolutely correct. In this case, this court can comfortably rely on Hoover to affirm the dismissal of those vicarious liability counts, which sought intentional tort recovery predicated upon a sexual assault. The second order that was entered by Judge Flanagan, the res judicata order, again, everything's been waived. So under Rule 341H7, the court can simply affirm that dismissal. But waiver aside, plaintiff was correct. There are three ingredients for the application of res judicata. There must be, number one, a final adjudication on the merits. Was there an adjudication on the merits? Absolutely. Federal Judge Amy St. Eve granted a Rule 12B6 motion to dismiss with prejudice. That is a final adjudication on the merits. She even stated in her order it would be futile to allow plaintiff any attempt to replete. Thirty days later, plaintiff had a big decision to make. Am I going to appeal or am I not going to appeal? For whatever reason, plaintiff chose not to appeal. She has now exhausted all appellate recourse from Judge St. Eve's order. This court has to recognize that federal court order under principles of res judicata and principles of comity. That order is an adjudication on the merits, of course, between element number two, the same parties. We have the same Veronica Hasbun in both cases. We have the same Resurrection Healthcare Corporation in both cases. The third element, and this is the only element that plaintiff disputes, is do these two actions, Hasbun federal and Hasbun state, involve the same cause of action? They absolutely do. Illinois Supreme Court made a decision long ago in River Park that we are going to follow the transactional test and we are not going to follow the same evidence test. When the Supreme Court made that decision, they deliberately chose a much broader application of res judicata to the exclusion of a much narrower application of res judicata. And although plaintiff doesn't say so this morning, I think what they're arguing is the same evidence test. We've heard plaintiffs say that, well, in the intentional tort action we have to do this kind of discovery and these sorts of inquiries and these sort of analysis, but then for the negligence we're going to have to delve into this bag of discovery. That's the same evidence test. This Court's not going to change course on the same evidence test versus the transactional test today. In fact, the transactional... There was a request for discovery. It was granted, but no discovery was ever taken. That is correct. In the federal action, the plaintiff objected facially to the idea that Dr. Tong was acting within the scope of his employment. And so, which is their right, disputed that, finding that certification by the Attorney General, and so Judge Blanche Manning did the right thing. She said, take discovery. I will give you X amount of time to take discovery. No discovery was absolutely taken. And so the Attorney General's certification that Dr. Tong was acting within the scope of his employment on that day is not anything other than a declaration by an attorney that becomes prima facie evidence and is then allowed to stand when the plaintiff makes absolutely no effort to contradict it. And for plaintiff to come to this Court and ask this Court to use the Attorney General's certification as some sort of a sword against resurrection, the idea that because the Attorney General certified that Dr. Tong was acting within the scope of his employment and then plaintiff refused to take discovery to attempt to rebut that presumption or attempt to rebut that prima facie evidence, and then to now say, well, Tong was acting within the scope of his employment for you too. That's not the law. The Westfall Act and the cases that I said in my brief demonstrate that that Attorney General certification is solely for the purposes of removal. It's to accomplish the intent of the Westfall Act, which is to provide broad immunity to those who decide to be agents of the federal government. And so... You're the first one who ever said, bless you to justice. Oh, no. Counsel, I appreciate it. You're welcome. And so all the elements of res judicata are here. I think the final thing I would like to say to the Court is that as the appellee, I have the luxury of asking the Court to affirm for any basis in the record. And the record also demonstrates to this Court that based upon principles of comity, these last two negligence claims that we're talking about have been dismissed by federal judges. Judge Blanche Manning, I take that back, Judge Amy St. Eve, dismissed both of these negligence claims before. With respect to negligence supervision, she dismissed it without prejudice. That's true. But then plaintiff pled over and abandoned it. She then later dismissed common-law negligence with prejudice and it wasn't appealed. And so even if this Court were to reverse somehow on res judicata and breathe life back into those negligence claims, a federal judge has already dismissed them. Under principles of comity, the courts in the state of Illinois give full faith and credit to the decisions of federal judges, and this Court would do it, a judge on remand would do it, it's easy. So for all of those reasons, we would ask this Court to either dismiss the appeal as moot or mootness aside, affirm both orders of Judge Kathy Flanagan because they're both correct under the law. Thank you. Thank you, Counsel. Mr. Longo, you are rebuttal? Excuse me, Mr. Longo, I apologize. No apology necessary, Your Honor. Did you ask to replete the intentional torts when they were dismissed? I don't believe so, Judge.  Typically, you know, appellate courts are prompt to say if you don't ask to replete, you're standing on your pleadings. So you didn't give the trial court a chance to accept an alternate view or version of the pleadings. So you're standing on what was dismissed the first time around. I believe it was Ms. Hazman's intention to submit an appeal when the appeal became ripe in accordance with the appellate rules as opposed to requesting leave to amend from the trial court, Judge. Fair enough. Unless there are no other questions from the bench, it is appellant's decision not to engage in any rebuttal argument. All right. Thank you, Mr. Paul. Thank you. We very much appreciate the well-prepared presentations given by counsel today, and this matter will be taken under advisement. Thank you very much. Crime's adjourned.